# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: <br> HARRY G. BLACKBURN <br> d/b/a HANK CONSTRUCTION <br> d/b/a HANK INSPECTION <br> d/b/a THREE CREEKS <br> and MARY H. BLACKBURN <br> f/k/a MARY H. HARRIS, <br><br> Debtors. | CASE NO. 3:05-14574 <br> CHAPTER 7 <br> JUDGE PAINE |

## MEMORANDUM

This matter is before the court on the Chapter 7 Trustee's objection to certain exemptions claimed by Mary H. Blackburn (hereinafter "debtor"). Specifically, the trustee objects to an annuity with Security Benefit Insurance Company with a listed value of $20,200.00 and funds in the amount of $2,350.00 contributed to American Funds IRA with a listed value of $50,000.00. The trustee asserts that the debtor's conversion of non-exempt shares of stock into the exempt annuity and IRA on the eve of filing constitutes a fraudulent conveyance rendering those assets unavailable as exempt property. The debtor contends that she was acting on the advice of counsel and engaging in permissible prebankruptcy planning to take full advantage of her statutorily permissible exemptions. For the reasons stated herein, the court DENIES the trustee's objections.

The facts are not in dispute. Mary Blackburn testified at the hearing that she and her joint debtor, Harry Blackburn, were undergoing a divorce at the time of the

bankruptcy filing. Mrs. Blackburn explained that one month prior to filing the petition, she liquidated a stock account which was her only savings. After consulting with her bankruptcy counsel, she used the $26,900.00 in proceeds from the stock sale to purchase an annuity with a one-time premium of $20,200.00, naming her two minor sons as beneficiaries. She also contributed $2,350.00 to her IRA account. Mrs. Blackburn filed bankruptcy nine days following the purchase of the annuity. On the debtor's Schedules B and C, the annuity and IRA accounts were listed as her property and claimed exempt. In the Statement of Financial Affairs, Mrs. Blackburn also gave a precise description of the liquidation of the stock account to purchase the annuity for her children. She answered Question 10 of her Statement of Financial Affairs asking about pre-petition transfers as follows:

| | |
|---|---|
| AMERICAN FUNDS IRA | $2,350.00 transferred to Debtor Mary Blackburn's IRA from stock sale. |
| LIQUIDATION OF STOCK SHARES | Joint Debtor liquidated shares of stock and received approximately $26,900.00, on 09/29/05. These funds were allocated by the Debtor as follows: $4,352.00 to pay creditors, $2,350.00 deposited into IRA account, and the balance was used to purchase an annuity contract, with her children named as beneficiaries. |

Mrs. Blackburn testified at the hearing that her only purpose was to make some provision for her then-minor children in case of her death, and she had no intent to defraud her creditors. Mr. and Mrs. Blackburn's bankruptcy schedules show over $1,800,000.00 in debt while Mrs. Blackburn explained that the IRA and stock account were her only savings for herself and her children.

The trustee relies upon *In re Covington*, 171 B.R. 294 (Bankr. M.D. Tenn. 1994) wherein Judge Lundin held that Tennessee fraudulent conveyance law prohibited the debtor's prebankruptcy purchase of a single premium insurance policy as an exempt

asset. In that case, after one bankruptcy case was dismissed and before a second case was filed, the debtor used insurance proceeds from a building fire to purchase the insurance policy and also conveyed other property to family while retaining a life estate. The court disallowed the exemptions and the trustee argues that the reasoning of ***Covington*** should govern. The debtor contends that the Code's own legislative history allows for exemption planning, and as long as the "pigs don't become hogs" then no fraudulent conveyance occurred.[1] The parties' arguments involve the interplay of 11 U.S.C. § 544(b), 11 U.S.C. § 522 and T.C.A. § 56-7-203.

As aptly explained by Judge Lundin in ***Covington***:

Tennessee law voids every conveyance made with the intent or purpose to delay, hinder or defraud creditors. Tenn.Code Ann. §§ 66-3-101, 66-3-308.[2] 11 U.S.C. § 544(b) permits a bankruptcy trustee to "avoid any

---

[1] The legislative history of the 1978 law in effect at the time of this filing of section 522(b) provides:

As under current law, the debtor will be permitted to convert nonexempt property into exempt property before the filing of a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

S Rep. No. 989, 95th Cong., 2d Sess 75-76 (1978). Under BAPCPA, Congress amended section 522 by adding subsections (o), (p) and (q) dealing with prefiling planning and homestead exemptions. Specifically, section 522(o) requires that property that is claimed exempt as a homestead must be reduced by the amount of any value attributable to the property that was converted from non-exempt property to exempt property with the intent to hinder, delay or defraud a creditor. 11 U.S.C. § 522(o) (2005). Even though the amendments to section 522 became effective immediately on April 20, 2005, the court is not deciding a homestead exemption issue. No like amendment was passed dealing with conversion of non-exempt assets into exempt annuities.

[2] Tenn. Code Ann. § 66-3-101 provides:

Every gift, grant, conveyance of lands, tenements, hereditaments, goods, or chattels, or of any rent, common or profit out of the same, by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or

3-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:05-bk-14574    Doc 135    Filed 05/02/07    Entered 05/02/07 12:08:15    Desc Main
Document    Page 3 of 8

transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an [allowable] unsecured claim."

The Tennessee Supreme Court has declared that conversion of nonexempt property into exempt property, with the purpose of placing it beyond the reach of creditors is a voidable fraudulent conveyance. ***Hollins v. Webb***, 2 Tenn.Cas. (Shan.) 581 (1877). ***See also In re Hall***, 31 B.R. 42, 45 (Bankr.E.D.Tenn.1983).

. . .

The Tennessee courts recognize that fraudulent conveyance cases are fact intensive. ***See Macon Bank & Trust Co. v. Holland,*** 715 S.W.2d 347, 349 (Tenn.Ct.App.1986) ("Whether a transfer is fraudulent is determined by the facts and circumstances of each case."). The Tennessee appellate courts have identified many "badges of fraud" to guide the trial courts in divining a debtor's intent for fraudulent conveyance purposes:

1. The transferor is in precarious financial condition.

2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.

3. Inadequate consideration for the transfer.

4. Secrecy or haste in carrying out the transfer.

5. A family or friendship relationship between the transferor and the transferee(s).

6. The transfer included all or substantially all of the transferor's nonexempt

---

purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or to deceive those who shall purchase the same lands, tenements, or hereditament, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, such person's heirs, successors, executors, administrators, and assigns, whose debts, suits, demands, estates, or interest, by such guileful and covinous practices as aforementioned, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding.

Tenn.Code Ann. § 66-3-308 provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud, either present or future creditors, is fraudulent as to both present and future creditors.

. . .

property.

7. Retention by the transferor of a life estate or other interest in the property transferred.

8. Failure of the transferor to produce available evidence explaining or rebutting a suspicious transaction.

9. Lack of innocent purpose or use for the transfer.

*See Weaver v. Nelms*, 750 S.W.2d 158 (Tenn.Ct.App.1987); ***Macon Bank and Trust Co. v. Holland,*** 715 S.W.2d 347 (Tenn.Ct.App.1986); ***Gurlich's, Inc. v. Myrick***, 54 Tenn.App. 97, 388 S.W.2d 353 (1964); ***Union Bank v. Chaffin***, 24 Tenn.App. 528, 147 S.W.2d 414 (1940); ***Bank of Blount County v. Dunn,*** 10 Tenn.App. 95 (1929); ***Grannis, White & Co. v. Smith***, 22 Tenn. (3 Hum.) 179 (1842); ***Floyd v. Goodwin***, 16 Tenn. (2 Yer.) 484 (1835).

*Covington* at 296-97. In *Covington*, Judge Lundin found the debtor's testimony was not believable; found that the debtor transferred assets while "acutely aware" of her liabilities; found that she could provide no explanation why she purchased the single-premium life insurance policy; found that the debtor also transferred real estate to family members with the intent to defraud creditors, and most importantly, found that the debtor intended to shield her assets from her creditors. The court ruled that the debtor's actions were "overwhelmingly tainted with badges of fraud." *Id.*.

The case now before the court is readily distinguishable. First, the court found Mrs. Blackburn to be a highly credible witness. She testified that she is a dental hygienist, and that on the advice of her bankruptcy counsel, she liquidated the stock to make some provision for her minor sons (from a previous marriage) from her only savings in the event of her death. She explained that her ex-husband was over $9,000 in arrears in child support, and she felt this was the only way to provide something for her two children. Her truthful testimony was that she in no way intended to defraud her creditors.

Just last year, the Bankruptcy Court for the Eastern District of Wisconsin

examined a factually similar case in ***In re Przybylski***, 340 B.R. 624 (Bankr. E.D. Wisc. 2006). In that case, the court considered the "fuzzy line between permissible pre-bankruptcy planning and the disposition of assets with the intent to hinder, delay or defraud creditors." ***Id.*** The debtors argued that "they were only trying to take advantage of legitimate exemptions." ***Id.*** "Conversions of assets from non-exempt to exempt forms within the year preceding a petition for bankruptcy are not necessarily fraudulent to creditors." ***Id (quoting Smiley v. First Nat'l Bank of Belleville (In re Smiley)***, 864 F.2d 562, 566 (7th Cir.1989). While the case did not present the precise facts here, it did provide a thorough analysis easily adaptable to varying factual situations.

In addition to the traditional "badges of fraud" the ***Przybylski*** court also considered such factors as:

1. Amount of exemption.
2. Proximity of time of conversion to time of filing for bankruptcy.
3. Source of funds used to acquire exempt property.
4. Misleading contacts with creditors by debtors while in the process of converting the assets from non-exempt to exempt status.
5. Purpose of the conversion of assets.
6. Conveyances for less than fair consideration.

***Przybylski*** at 631.

A few of the "badges of fraud" such as, proximity to the petition, familial relationship, and precarious financial condition work against the debtor, but the majority of proof supports the conclusion that no fraudulent conveyance occurred. The debtor's credible testimony alone was enough to convince the court, but further reason to deny the trustee's objection is found when the the ***Przybylski*** factors are considered. The

debtor's exemption amount is minuscule when considering the overall debt in this case.[3] Although the proximity to filing is not helpful, the debtor's honest and full disclosure of her actions shows the court her sincerity. She did not borrow funds (i.e. a second mortgage) to acquire non-exempt assets. The debtor did not mislead any creditor, and provided a credible, legitimate purpose for the conversion of assets. Finally, there was no allegation of a lack of consideration for her purchase of the annuity.

Based on all of the above the court finds, that in this case, the debtor's exemption in the annuity is allowed, and the trustee's objections are overruled.[4]

On much of the same basis, the trustee objected to the $2,350 the debtor contributed to her IRA. The money the debtor put into her IRA likewise came from the sale of the non-exempt stock asset. For all the same reasons that the court overruled the trustee's objection to the annuity, the court likewise overrules the trustee's objection to the debtor's $2,350 contribution to her IRA from the non-exempt stock funds.

---

[3] As indicated earlier, the joint debtors' liabilities exceed $1,800,000.00. The joint debtors listed assets valued at almost $1,700,000.00. A review of the debtors' Schedules shows that they held over $1,400.000.00 in secured debt jointly. Of the debtors' unsecured, non-priority debt totaling more than $393,000.00, the Blackburn's owed approximately $198,000.00 jointly. Mrs. Blackburn individually owed $2,377.93 and Mr. Blackburn's individual unsecured debt totaled approximately $192,500.00.

[4] The trustee argued that even if the court found no fraudulent conveyance, nonetheless the annuity did not qualify as an exemptible annuity pursuant to the statutes. The court has examined the annuity and the statute and can find no reason why it is does not qualify as an annuity that is exempt pursuant to T.C.A. § 56-7-203. That statute provides in relevant part:

> The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the wife and/or children, or dependent relatives of such persons, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to such person.

T.C.A. § 56-7-203.

7-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:05-bk-14574    Doc 135    Filed 05/02/07    Entered 05/02/07 12:08:15    Desc Main
Document      Page 7 of 8

In summary, therefore, the court OVERRULES the trustee's objections to the debtor's exemption of her American Funds IRA, and her Security Benefit Annuity for the benefit of her children. The court will instruct counsel for the debtor to prepare an ORDER not inconsistent with this Memorandum within five (5) days of entry of the Memorandum.

***THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.***